UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL LITT, KAROL LITT &
MARVIN LITT,                                          Case No. 13-12462

                Plaintiffs,            Paul D. Borman
v.                                                    United States District Judge

                                                     Michael J. Hluchaniuk
PORTFOLIO RECOVERY                                    United States Magistrate Judge
ASSOCIATES LLC & JOHN DOE,

                Defendants.
_____/

OPINION AND ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (ECF NO. 105) AND
(2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (ECF NO. 110)

      In the claims that remain in this action, Plaintiff Michael Litt alleges that Defendant Portfolio

Recovery Associates LLC ("PRA") contacted his parents, Marvin and Karol Litt, more than two

hundred times regarding a debt owed by Michael Litt, in violation of the Fair Debt Collection

Practices Act, 15 U.S.C. §1692 *et seq.*[1] Before the Court are the parties' cross-motions for summary

---

[1] Plaintiffs Karol Litt and Marvin Litt, Michael Litt's parents, accepted PRA's Rule 68 Offer of Judgment in this matter on July 16, 2014. (ECF No. 71, Notice of Acceptance of Offer of Judgment.) On September 16, 2014, the Court entered Judgment against PRA in the amount of $4,000, plus reasonable attorneys' fees and costs in an amount that was to be determined, pursuant to Defendant's Rule 68 Offer of Judgment. (ECF No. 101.) On April 22, 2015, this Court adopted Magistrate Judge Michael Hluchaniuk's Report and Recommendation to award Plaintiffs Marvin and Karol Litt a total sum of $33,882.70 in fees and costs. (ECF No. 125, Order Adopting Report and Recommendation.) On June 12, 2015, Plaintiffs filed a Satisfaction of Judgment indicating that the Judgment entered against Marvin and Karol Litt by this Court on September 16, 2014 (ECF No. 101) has been satisfied in full as to all Defendants. (ECF No. 127.)

      At the hearing on the parties' cross-motions for summary judgment, Plaintiff Michael Litt's counsel confirmed the claims against Marvin and Karol Litt have been "completely resolved," leaving only Michael Litt's claims "revolving around the third party contacts with his parents." In

1

judgment.  The Court held a hearing on August 6, 2015.  Following the hearing, the parties indicated

an intent to attempt to resolve the issues without a ruling from the Court on their motions.  The

parties have informed the Court that efforts at resolution have been unsuccessful.  Accordingly, for

the reasons that follow, the Court will GRANT IN PART AND DENY IN PART Plaintiff's Motion

for Partial Summary Judgment (ECF No. 105) and will GRANT IN PART AND DENY IN PART

Defendant's Motion for Summary Judgment (ECF No. 110).

**INTRODUCTION**

Plaintiff Michael Litt claims that PRA violated the FDCPA by placing more than 200 phone

calls to his parents, allegedly in an effort to collect debts owed by Michael Litt.  PRA admits having

placed the calls to Litt's parents' phone but responds that:  (1) Michael Litt's claims are barred by

the statute of limitations; (2) any claims based on calls to Michael Litt's parents were resolved by

his parents' acceptance of PRA's Offer of Judgment; (3) PRA was calling Marvin and Karol Litt

under the reasonable belief that Michael Litt's parents' phone number was a good number at which

Michael Litt could be reached; and (4) as to calls that were placed after PRA was made aware that

the parents' phone was a "wrong number" for Michael Litt, PRA is entitled to the FDCPA's bona

fide error defense because the error was unintentional and PRA maintained procedures reasonably

adopted to avoid such errors.

---

fact, counsel indicated that Michael Litt seeks only statutory damages under the FDCPA of up to
$1,000 to penalize the debt collector for "getting caught violating the law."  Accordingly, Michael
Litt does not seek actual damages for any alleged emotional distress or damage to his relationship
with his parents and has elected not to proceed on the remaining claims for actual damages in his
Amended Complaint.

## I.     BACKGROUND

Plaintiff Michael Litt has abandoned several claims and his parents' claims have been resolved.  Remaining in this action are Michael Litt's claims related to the 200-plus calls that PRA admittedly placed to his parents' phone number.  His remaining claims are brought: (1) under §§ 1692b(1)-(3) and 1692c(b), claiming that PRA violated those sections by placing calls to his parents without his consent and for disclosing to his parents that he owed a debt; and (2) under § 1692d – a catchall provision – claiming that PRA placed these calls with the intention to humiliate and embarrass him.[2]

The following facts, largely supported by PRA's own call logs and the testimony of PRA's designated 30(b)(6) representative, Tara Privette, are undisputed.  PRA purchased from the original creditors three debts owed by Michael Litt: 1) a GE Capital account (for purchases from Meijer), 2) a Four Score Resource account (for purchases from Kay Jewelers) and 3) a Citibank account (for purchases from Good Year).  ECF No. 105, Pl.'s Mot. 4; Pl.'s Mot. Ex. 1, July 10, 2014 Deposition of Tara Privette 43.  In an effort to collect on one or more of the above debts, PRA made the following calls to Michael Litt's home phone, XXX-XXX-1801, none of which was answered by Michael Litt:

---

[2] Plaintiff's Amended Complaint also asserted claims under the Michigan Occupational Code, Mich. Comp. Laws § 339.901 *et seq.* (the "MOC") and the Michigan Collection Practices Act, Mich. Comp. Laws §§ 445.251 *et seq.* (the "MCPA") for the same conduct that underlies his prohibited third-party contact claims under the FDCPA. As noted *supra* at note 1, Plaintiff's counsel indicated at the hearing on the parties' cross-motions for summary judgment that Plaintiff no longer claims actual damages under any statutory provision but seeks only statutory damages of up to $1,000 under the FDCPA.  Accordingly, Plaintiff has abandoned his state law claims.

| **2011** | **2012** | **2013** |
|---|---|---|
| May:  7 | July:  3 | January: 23 |
| June:  8 | August: 24 | February: 8 |
|  | September: 22 |  |
|  | October: 20 |  |
|  | November: 2 |  |
|  | December: 19 |  |

ECF No. 109, Def.'s Mot. Ex. 4, PRA Call Log, Bates Stamp PRA100-103 (showing calls placed

and a duration of 0 seconds for each call); Privette Dep. 204-205; Def.'s Mot. Ex. 6, Oct. 31, 2014

Declaration of Tara Privette, ¶¶ 12-16.

In an effort to collect on one or more of the three debts, PRA made the following calls to

Michael Litts' parents, XXX-XXX-1078:

| **2010** | **2011** | **2012** | **2013** |
|---|---|---|---|
| July: 3 | January: 8 | July: 3 | January: 21 |
| August: 4 | February: 9 | August: 24 | February: 8 |
| September: 4 | March: 9 | September: 19 |  |
| October: 4 | April: 11 | October: 22 |  |
| November: 8 | May: 14 | November: 3 |  |
| December: 9 | June: 11 | December: 19 |  |

ECF No. 109, Def.'s Mot. Ex. 4, PRA Call Log, Bates Stamp PRA104-109; Privette Dep. 204-205;

Def.'s Mot. Ex. 6, Privette Decl. ¶ 17.

Of the 213 calls placed to Michael Litt's parents, 5 calls were answered.  Def.'s Mot. Ex. 4,

PRA Call Log, PRA104-109 (showing call duration of 0 seconds for all but five calls placed);

Privette Decl. ¶ 19.  Those five calls were placed on the following dates, for the following duration

and their content is noted in PRA Call Log files as follows:

> **August 25, 2010 (99 second call):** "Left msg at XXX-XXX-1078 [HOME] N1 IS
> OUT OF STATE . . NO ALT #. . . N1 IS CALIFORNIA. . .LM" (Def.'s Mot. Ex. 4,
> PRA Call Log, PRA66, PRA104.)  Ms. Privette interprets this notation in the PRA
> Call Log as follows: "[A]n individual answered the phone, stated that Michael Litt

4

was in California at the time, and when asked for an alternate phone number for the plaintiff, stated that there was no alternate number to reach him at." (ECF No. 109, Ex. 6, Privette Decl. ¶ 20). Ms. Privette further testified that this indicated to her "that at the time they called, he was out-of-state; and that he was in California; and that it was an appropriate number to leave a message for him at . . . and there was no alternate number." (Privette Dep. 126; 211-12.);

**November 16, 2010 (25 second call):** "DIALED RELATION 1 HOME: XXX-XXX-1078, N1'S FATHER SD N1 NOT IN" (Def.'s Mot. Ex. 4, PRA Call Log, PRA65, PRA104). Ms. Privette interprets this notation in the PRA Call Log as follows: "[T]he plaintiff's father answered and stated that he was not in." (Privette Decl. ¶ 21.) Ms. Privette further testified that this indicated to her that the caller dialed the number that was listed as the home number at that time and that plaintiff's father told the caller that Michael Litt was not in. (Privette Dep. 127, 213.)

**December 1, 2010 (40 second call):** "MOP SAID N1 NOT THERE AND HE IS N1 FATHER NO OTHER NO#NML" (Def.'s Mot. Ex. 4, PRA Call Log, PRA65, PRA 104). Ms. Privette interprets this notation in the PRA Call Log as follows: "[A] male answered the phone, stated he was the plaintiff's father, and when asked if there was another phone number to reach the plaintiff at, stated that there was not." (Privette Decl. ¶ 22.) Ms. Privette further testified that this indicated to her that "MOP," man on the phone, said Michael Litt was not there and that there is no better number to reach him at. (Privette Dep. 129, 213.)

**January 6, 2011 (9 second call):** "No Msg at XXX-XXX-1078 [HOME] PU...HU" (Def.'s Mot. Ex. 4, PRA Call Log, PRA 65, PRA104). Ms. Privette interprets this notation in the PRA Call Log as indicating that someone answered the phone and hung it up. (Privette Decl. ¶ 23.)

**February 5, 2011 (27 second call):** "Wrong Number - XXX-XXX-1078 [HOME] LOP SD N1 NOT IN SD SHE HAS NO NUMBER FOR N1 WRONGNU[M]BER" (Def.'s Mot. Ex. 4, PRA Call Log, PRA64, PRA105). Ms. Privette interprets this notation in the PRA Call Log as indicating that "a female answered the . . . call, stated that the plaintiff was not in, and stated that she did not have a phone number to reach the plaintiff at." (Privette Decl. ¶ 24.)[3] The PRA collector who made this call interpreted this February 5, 2011 call as indicating that XXX-XXX-1078 was a "wrong number" for Plaintiff. (ECF No. 109, Ex. 4, PRA Call Log, PRA64.)

On February 15, 2011, just 10 days after speaking with Plaintiff's parents and noting that

---

[3]  Additionally, on **January 12, 2011 (76 second call)**, a message was left: "Left Msg at XXX-XXX-1078 [HOME] MOP LM3" (Def.'s Mot. Ex. 4, PRA Call Log, PRA65, PRA105.)

XXX-XXX-1078 was the "wrong number" to call to reach Plaintiff, PRA's Call Log reflects that it received the XXX-XXX-1078 again from TransUnion as a "good" phone number for Plaintiff. (Def.'s Mot. Ex. 4, PRA Call Log, PRA64, noting the following: "Phone number XXX-XXX-1078 received from TU trigger.").  PRA began calling Michael Litt's parents' phone number again on February 17, 2011, despite the February 5, 2011 notation in the PRA Call Log that the parents' phone was the "wrong number" at which to reach Michael Litt, and called his parents phone an additional 164 times through February, 2013.

While Plaintiff does not appear to contest the authenticity of PRA Call Logs, Plaintiff does deny that those entries, made by individuals who have never been identified, or Ms. Privette's interpretation of those entries, accurately reflect the conversations that occurred between his parents and the PRA callers.  Through the Declarations of his parents, Marvin and Karol Litt, Plaintiff asserts that the PRA callers called them hundreds of times from 2010-2013 and informed them that their son owed money. Pl.'s Mot. Exs. 4 and 5, August 27, 2014 Declarations of Marvin and Karol Litt.  Plaintiffs' parents testify in their Declarations that they told PRA callers that Michael had not lived with them for many years and asked PRA to stop calling them, but PRA callers continued to call anyway.  *Id*. ¶¶ 2-4.  Both Marvin and Karol Litt testified that the PRA calls upset Karol Litt and made her medical conditions worse, caused her to be sick to her stomach and to have headaches. *Id*. ¶ 5.  Both Marvin and Karol testify that Michael Litt was upset and embarrassed over PRA collectors calling his parents' home and that the PRA harassment strained their relationship with their son.  *Id. ¶* 6.  On October 30, 2014, Marvin Litt filed an Amended Declaration, explaining that he had reviewed the call records produced by PRA and that he believes that the records accurately reflect the number of calls the Litts received.  ECF No. 108, October 23, 2014 Amended Declaration

6

of Marvin Litt ¶ 2.  Marvin Litt again asserts that PRA told them that Michael Litt owed them money.  *Id*.  ¶ 4.  Marvin Litt also states that PRA never stated during any conversation that they were confirming or correcting location information for Michael Litt.  *Id.* ¶ 5.  Marvin Litt also states that he told his son Michael on several occasions that PRA was calling about his debt and that it was upsetting his mother.  *Id*. ¶ 9.[4]  Marvin and Karol Litt cannot identify the precise dates on which PRA callers told them that their son Michael owed a debt or the exact dates on which they told PRA that Michael did not live with them and asked PRA to stop calling them.  Their testimony is clear, however, that these statements were made by PRA callers to them and by them to PRA callers.  PRA only began recording their calls during the first quarter of 2011, so none of the calls that Marvin and/or Karol Litt answered were recorded.  Privette Dep. 153-55; Privette Decl. ¶¶ 28-29.

According to the testimony of Ms. Privette, PRA's Fed. R. Civ. P. 30(b)(6) deponent, PRA collectors are trained on how to comply with the FDCPA in a two week training course.  Privette Decl. ¶¶ 37-38.  The PRA's policies on the FDCPA are highlighted throughout the two week training course and collectors are required to pass an FDCPA assessment prior to making collection calls.  *Id*. ¶¶ 39, 41.  Each collector is required to go through an annual recertification process to ensure compliance with the FDCPA.  *Id*. ¶ 42.  Compliance audits are in place to monitor compliance with the FDCPA and disciplinary procedures are in place for violations of the FDCPA.  *Id*. ¶¶ 43-45.

---

[4]  Marvin Litt's Amended Declaration was filed as a supplemental exhibit to Plaintiff's motion for summary judgment on October 30, 2014, before PRA filed its response to Plaintiff's motion for summary judgment.  (ECF No. 108, Amended Declaration of Marvin Litt.)  The Amended Declaration does not contradict anything that Marvin Litt stated in his original Declaration and the Court will consider it as part of the Summary Judgment record.

Specifically, PRA trains its collectors: 1) not to disclose a debtor's debts to third parties (including a debtor's parents); 2) not to place calls to third parties more than once in an effort to obtain location information; and 3) to remove phone numbers that a third party states is the wrong number for the debtor.  ECF No. 109, Ex. 4, FDCPA Training Manual, PRA003, PRA009, PRA012-014, PRA018-019; Privette Dep. 89-92, 149-151, 176, 182-83, 189, 192-93, 197, 202-03.

## II.    STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may file a motion for summary judgment "at any time until 30 days after the close of all discovery," unless a different time is set by local rule or court order.  Fed. R. Civ. P. 56(b).  Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a).  "Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  *See also Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties."  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted).  A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Conversely,

8

where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984). "'The central issue is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (quoting *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005)).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 324. "The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. The plaintiff must present more than a mere scintilla of the evidence. To support his or her position, he or she must present evidence on which the trier of fact could find for the plaintiff." *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000) (internal quotation marks and citations omitted). In doing so, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires the non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir.

1997); *see Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).  "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A).

"Rule 56(e)(2) leaves no doubt about the obligation of a summary judgment opponent to make [his] case with a showing of facts that can be established by evidence that will be admissible at trial. . . . In fact, '[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.' Rule 56(e) identifies affidavits, depositions, and answers to interrogatories as appropriate items that may be used to support or oppose summary judgment." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)).  "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose."  *Celotex*, 477 U.S. at 323-34.

"'For cross-motions for summary judgment, we must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party.'" *Spectrum Health Continuing Care Grp. v. Anna Marie Bowling Irrevocable Trust*, 410 F.3d 304, 309 (6th Cir. 2005) (quoting *Beck v. City of Cleveland*, 390 F.3d 912, 917 (6th Cir. 2004)).  "'The filing of cross-motions for summary judgment does not necessarily mean that an award of summary judgment is appropriate.'" *Id.* (alteration omitted).

10

III.     ANALYSIS

    **A.     Plaintiff is Entitled to Summary Judgment on His Claim That PRA Violated Section § 1692c(b).**

    The FDCPA includes a provision specifically regulating third-party communications by debt collectors.  15 U.S.C. § 1692c(b), entitled "Communications With Third Parties," provides:

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C.A. § 1692c(b).

    Section 1692b, the "exception" to otherwise prohibited third party communications, provides the following regarding the content and timing of such communications:

> Any debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall--
>
> (1) identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer;
>
> (2) not state that such consumer owes any debt;
>
> (3) not communicate with any such person more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information;
>
> (4) not communicate by post card;
>
> (5) not use any language or symbol on any envelope or in the contents of any communication effected by the mails or telegram that indicates that the debt collector is in the debt collection business or that the communication relates to the collection of a debt; and

11

(6) after the debt collector knows the consumer is represented by an attorney with regard to the subject debt and has knowledge of, or can readily ascertain, such attorney's name and address, not communicate with any person other than that attorney, unless the attorney fails to respond within a reasonable period of time to communication from the debt collector.

15 U.S.C.A. § 1692b.

Thus, 1692b has been described as a "safe harbor" provision, setting forth the limited circumstances under which a debt collector may have contact with third parties, i.e. when seeking to locate the debtor, without violating the FDCPA's general proscription against such communications. *See Brown III v. Van Ru Credit Corp.*, 804 F.3d 740, 745 (6th Cir. 2015) (noting that "[s]ection 1692b provides a safe harbor for third-party consumer location inquiries" that conform to the listed conditions).

Plaintiff claims that PRA violated "either and/or" sections 1692b(1), (2) and 1692c(b) by mentioning to Marvin and Carol Litt that their son, Michael Litt, owed a debt and that PRA violated § 1692b(3) by contacting his parents more than once to obtain location information. PRA responds that: (1) Plaintiff lacks standing to sue under § 1692b; (2) the safe harbor provision is inapplicable in this case because PRA was at all times calling Marvin and Karol Litt's phone not to obtain location information but because it believed that it was a "good number" for directly contacting the debtor, Michael Litt; (3) even assuming PRA violated the FDCPA through its numerous phone calls to Marvin and Karol Litt, Michael Litt's claims are (a) barred by the statute of limitations, and (b) PRA is entitled to assert the bona fide error defense.

### 1.      Plaintiff has standing to sue under § 1692c(b).

PRA argues that Plaintiff Michael Litt, the undisputed debtor on the accounts in question and therefore a "consumer" under the FDCPA, does not have standing to sue under 15 U.S.C. § 1692b.

12

Courts have recognized that § 1692b defines how a debt collector is permitted to communicate with third parties about a "consumer's" debt, but does not create an independent private right of action. However, a consumer still may maintain an action against a debt collector for a failure to adhere to the requirements of §1692b, but he must do so under § 1692c(b). Reading § 1692b and 1692c(b) together, "1692b contains a list of exceptions to Section 1692c(b), which prohibits a debt collector from communicating, in connection with the collection of a debt, with anyone other than the 'consumer.'" *Morant v. Miracle Fin. Inc.*, No. 11-4140, 2012 WL 4174893, at *3 (E.D.N.Y. Sept. 17, 2012). "'Noncompliance with § 1692b is thus a violation of § 1692c(b), and not an independent violation of the Act.'" *Id.* (quoting *Thomas v. Consumer Adjustment Co., Inc.*, 579 F. Supp. 2d 1290, 1297 (E.D. Mo. 2008)). The FDCPA defines a consumer as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). Michael Litt, as the individual obligated on the debt, is a "consumer" and has standing to sue under § 1692c. *Montgomery v. Huntington Bank*, 346 F.3d 693, 696–97 (6th Cir. 2003). Michael Litt has standing to assert a claim against PRA under § 1692c(b) for prohibited third party communications and, if pertinent, Plaintiff may base that claim on PRA's alleged failure to comply with the safe harbor provisions of § 1692b. As discussed *infra*, however, PRA does not claim protection under the safe harbor provisions of § 1692b in this case and therefore Plaintiff need not rely on that section of the FDCPA to establish that PRA violated § 1692c(b) by communicating with third parties, *i.e.* Plaintiff's parents, without Plaintiff's consent in connection with the collection of Plaintiff's debt.[5]

---

[5] Even had PRA claimed that it was only contacting the elder Litts to obtain location information regarding their son Michael, the record contains no evidence to support a contention that PRA complied with the safe harbor provisions of § 1692b. Marvin Litt testified that at no time did PRA collectors state that they were confirming or correcting location information. ECF No. 108, Amended Declaration of Marvin Litt ¶ 5. PRA never deposed the elder Litts and has introduced no

13

### 2.     PRA violated § 1692c(b) by contacting Michael Litt's parents more than 100 times after learning that Marvin and Karol Litt's phone number was a "wrong number" for reaching Michael Litt.

Even viewing the facts in the light most favorable to PRA, there is no genuine dispute of material fact that PRA placed over 200 calls to Plaintiff's parents after learning that Marvin and Karol Litt's number was a "wrong number" for directly reaching Michael Litt. Approximately 120 of these calls occurred within the one-year period prior to the filing of Plaintiff's Complaint on May 1, 2013. Because the FDCPA is a strict liability statute, and because there is no genuine issue of material fact that Marvin and Karol Litt's number was known to PRA, as of February 5, 2011, to be a third party contact number, it is irrelevant that PRA now takes the litigation position that it "believed" that it was at all times calling a "good" number for Michael Litt when dialing Marvin and Karol Litt.[6] There is no exception in § 1692b for third party contacts based upon such a mistaken

---

evidence to contradict this assertion, supplying no evidence that PRA collectors ever informed Marvin and Karol Litt that they were "confirming or correcting location information" regarding Michael Litt as required by § 1692b(1). Indeed, PRA expressly disclaims a safe harbor purpose and could not possibly carry the burden of establishing that it would have been entitled to claim the exception for third party contacts contained in § 1692b. *See Evankavitch v. Green Tree Servicing, LLC*, 793 F.3d 355 (3d Cir. 2015) (holding that the debt collector bears the burden of showing that the safe harbor provision applies and that the challenged third-party communication fits within § 1692b's exception for acquisition of location information).

[6]  In complete contradiction to PRA's clear concession that its collectors should have removed Marvin and Karol Litt's phone number from their records and never contacted them again after the February 5, 2011 "wrong number" notation was entered in the call log, PRA has elsewhere "suggested" that the "wrong number" notation in the PRA call log was placed in the log by the collector "in an abundance of caution" and that the actual underlying detail in the February 5, 2011 call log entry suggests that in fact the collector still believed that the elder Litts' number continued to be a good number for directly reaching Michael Litt. Not only is this suggestion directly contradicted by PRA's admission that the number should have been removed from PRA's records following the "wrong number" entry, but the suggestion is pure speculation as to what the collector who made the February 5, 2011 phone call was thinking when he or she placed the "wrong number" entry in the call log. The collector who placed the February 5, 2011 call has never been identified, deposed or offered an affidavit and thus there is no testimony in the record regarding the collector's

14

"belief." Accordingly, Plaintiff is entitled to summary judgment on his claim that PRA violated §
1692c(b) by calling his parents over one hundred times without his consent in connection with the
collection of his debts.

It is undisputed that on February 5, 2011, Karol Litt answered a phone call from a PRA
collector and told the collector that Marvin and Karol Litt's number was not a number at which
Michael Litt could be reached.   Karol Litt so testified in her Declaration and PRA's collector
expressly noted on that date after speaking with Karol Litt that Marvin and Karol Litt's number was
a "wrong number" for reaching the debtor, Michael Litt.   Thereafter, PRA was limited by the statute
to communicating with Marvin and Karol Litt, now known to PRA to be third parties, under the safe
harbor provisions of § 1692b.   But PRA does not attempt to demonstrate that it operated within the
safe harbor provision of § 1692b, conceding that it continued to call Marvin and Karol Litt over 100
times in a direct effort to reach Michael Litt after learning that Marvin and Karol Litt's number was
the "wrong number" at which to reach the debtor.   PRA argues that it was justified in continuing to
call the elder Litts, notwithstanding the notation in its own records that the debtor could not be
reached at their number, because it "believed" that it was calling a "good" number for reaching
Michael Litt.   The FDCPA is a strict liability statute, and "believing" that it was calling a good

---

motivations in placing the "wrong number" notation in the PRA call log. The Court concludes that
there is no genuine issue of material fact that the "wrong number" notation meant exactly what it
said and what PRA concedes that it meant – Marvin and Karol Litt were third parties whose number
was not to be called again for purposes of directly reaching their son Michael. PRA's unsupported
suggestion that PRA callers believed they were FDCPA compliant in ignoring the "wrong number"
notation fails to create a genuine issue of material fact as to the purpose or propriety of any post-
February 5, 2011 calls and is to be distinguished from the argument made by PRA in support of its
bona fide error defense, discussed *infra*, that PRA continued to believe that Marvin and Karol Litt's
number was a good number after February 5, 2011 due to a "procedural error" that resulted in the
number not being properly removed from the PRA system.  *See infra* discussion at IIIC.

number to directly reach the debtor is not an exception included within the safe harbor provisions of § 1692b. *See Gryzbowski v. L.C. System, Inc.*, 691 F. Supp. 2d 618, 624 (M.D. Pa. 2010) (holding that defendant's "subjective belief" that the number it called was that of plaintiff's employer and not her cell phone was "irrelevant as the FDCPA is a strict liability statute"); *Allen v. Checkredi of Kentucky, LLC*, No. 09-103, 2010 WL 4791947, at *4 (E.D. Ky. Nov. 17, 2010) (noting that "because the Sixth Circuit treats the FDCPA as a strict liability statute, a single or technical violation by Defendant is sufficient to incur liability," and finding that because defendant communicated with plaintiff's father, mother and sister regarding plaintiff's debt, defendant "would be found to have violated § 1992c(b) unless it is protected by the FDCPA's safe harbor provision, 15 U.S.C. § 1692b"); *Kempa v. Cadlerock Joint Ventures, L.P.*, No. 10-11696, 2011 WL 761500, at *4-5 (E.D. Mich. Feb. 25, 2011) (holding that because the FDCPA is a strict liability statute, plaintiff was entitled to summary judgment on her § 1692c(b) claim despite the fact that defendant thought it was entitled to contact the plaintiff's parents). Therefore PRA is liable for violating § 1692c(b) for communicating with a third party in connection with the collection of the debt without the consent of the debtor unless it is protected by the safe harbor provisions of § 1692b. *Checkredi*, 2010 WL 4791947, at *4.

In this case, PRA does not even suggest that it is protected by the safe harbor provisions of § 1692b. In fact, at the hearing on the parties' cross-motions for summary judgment and in its briefing, PRA conceded that Marvin and Karol Litt should not have been called again after their number was noted as a "wrong number" by a PRA collector on February 5, 2011, which is "why [PRA] laid out the bona fide error defense." *See infra* discussion of PRA's bona fide error defense at IIIC.

16

Whether or not PRA is entitled to assert the bona fide error defense for this conduct is irrelevant to the Court's determination that it violated § 1692c(b) by contacting Marvin and Karol Litt over one hundred times in connection with Michael Litt's debt after learning that the debtor could not be reached at Marvin and Karol Litt's number and that it was calling a third party at a "wrong number" to call to reach Michael Litt.

> **3.      PRA's one-hundred plus calls within the one year period preceding the filing of Plaintiff's Complaint, even if unanswered, were "communications" under the FDCPA on the facts of this case.**

The FDCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium."  15 U.S.C. § 1692a(2).  PRA argues that only those five (5) calls that the PRA call logs show were answered by Plaintiff's parents were communications under the FDCPA and thus only those calls can serve as a basis for Plaintiff's claims in this action.  PRA asserts (correctly) that the last of those calls was answered on February 5, 2011, outside the FDCPA's one-year limitations period.  PRA thus argues that Plaintiff's claims in this action are barred by the FDCPA's one-year statute of limitations, notwithstanding the undisputed fact that PRA placed over 100 calls to Plaintiff's parents within the limitations period. The Court concludes that, on the facts of this case, the one-hundred plus unanswered calls to Marvin and Karol Litt within the limitations period were "communications" under the FDCPA.  In reaching this conclusion, the Court relies on several cases from outside this district and circuit that it finds persuasive and also on a recent Sixth Circuit case in accord with the rationale of those cases.

Courts that have directly considered the question of whether an unanswered telephone call constitutes a "communication" under § 1692c focus the analysis on the information that an unanswered call imparted to the called party based on the facts of the case.  In particular, the courts

consider whether the telephone number appearing on the called party's telephone screen, or the information appearing on their caller ID, sufficiently conveyed to that party, in the context of that case, information regarding a debt.  For example, in *Cerrato v. Solomon & Solomon*, 909 F. Supp. 2d 139 (D. Conn. 2012), plaintiff faxed the debt collector requesting that the collector cease communication regarding the debt.   Upon receipt of this fax, Solomon was prohibited from communicating further with plaintiff directly regarding her debt.  *Id*. at 144.  Following submission of her fax, plaintiff received eight additional phone calls from Solomon that she did not answer. Plaintiff testified, however, that Solomon's name appeared on her caller ID, conveying to her that a debt collector was contacting her.  *Id*. at 145.  The record established that prior to receipt of her cease and desist fax, Solomon had contacted plaintiff 117 times regarding her debts, displaying the same information on her telephone that was displayed on the phone after the cease and desist fax had been sent.  *Id*.  The court concluded that, given plaintiff's familiarity with Solomon's identifying information and their purpose for calling her based on the previous 117 calls, it was "difficult to see how Solomon's eight unanswered telephone calls, which displayed as such on the viewer ID of Cerrato and were seen by her, could not constitute 'communications.'"  *Id*. at 146-47.   Given Solomon's previous communications with plaintiff, the unanswered calls conveyed that a debt collector was calling regarding a debt.  The court in *Cerrato* distinguished *Wilfong v. Persolve, LLC*, No. 10-3083, 2011 WL 2678925 (D. Or. June 2, 2011), which reached the opposite conclusion regarding an unanswered phone call.  In *Wilfong*, the consumer received only one unanswered call after she sent her cease and desist letter and there was "no evidence before the court that the debt collector had previously contacted the consumer by telephone" prior to that one unanswered call.

In *Rush v. Portfolio Recovery Assoc. LLC*, 977 F. Supp. 2d 414 (2014), the court discussed both *Cerrato* and *Wilfong*, and concluded that unanswered calls that occurred after plaintiffs had at least "inferentially" understood the calls to be from a debt collector, were communications under § 1692c:

> [W]ith respect to those unanswered phone calls that occurred after Plaintiffs retained counsel, I find that, like in *Cerrato*, the record shows, directly or inferential, that Plaintiffs understood these calls to be from a debt collector seeking to convey information about a debt. *See Cerrato*, 909 F. Supp. 2d at 145 ("The calls conveyed to Cerrato (1) who was calling because Solomon's name appeared on her caller ID display, and (2) why Solomon was calling—to collect her debts—because that was (a) the purpose of the myriad calls she received prior to her cease and desist letter, and (b) Solomon's role as a debt collector."). Plaintiffs knew who was calling them from their caller ID system, despite the fact that the phone calls went unanswered and Portfolio never left any voicemails. Additionally, on the facts in this case, it can be reasonably inferred that the reason Plaintiffs retained counsel and had a cease and desist letter sent to Portfolio was because Plaintiffs at some point understood Portfolio to be a debt collector calling about a debt. In this manner, the phone calls that occurred after Plaintiffs retained counsel are properly considered communications because they indirectly conveyed to Plaintiffs "information regarding a debt." *See* 15 U.S.C. § 1692a(2); *Cerrato*, 909 F. Supp. 2d at 149.

*Rush*, 977 F. Supp. 2d at 423-24.

Recently, in *Brown III v. Van Ru Credit Corp*., 804 F.3d 740 (6th Cir. 2015), the Sixth Circuit addressed a related issue –  whether a voicemail left on the debtor's work phone and heard by a co-worker was a "communication" under § 1692c(b).  In *Van Ru*, the debtor, Brown, owed a student loan debt and Van Ru sought to collect on the debt.  Van Ru twice contacted the business that Brown owned, once by mailing a letter seeking payroll information and second by leaving the following voicemail in Brown's business's general mail box:

> Good morning, my name is Kay and I'm calling from Van Ru Credit Corporation. If someone from the payroll department can please return my phone call my phone number is (877) 419-5627 and the reference number is *****488; again my telephone number is (877) 419-5627 and reference number is *****488.

19

804 F.3d at 741. An employee at Brown's business heard the message. Brown filed suit under the FDCPA, claiming that this voicemail message violated § 1692c(b) by communicating with a third party regarding Brown's debt. The district court granted Van Ru's motion for judgment on the pleadings, reasoning that the voicemail did not imply the existence of a debt and therefore was not a "communication" as defined by the FDCPA. *Id*. at 742. The Sixth Circuit affirmed, holding that the data contained in the voicemail would convey the existence of a debt "only in the most exceptional of circumstances," which the court found had not been pled in Brown's case. However, in finding that the voicemail did not convey the existence of a debt in the context of Brown's suit, the Sixth Circuit expressly recognized that such an inference could be drawn in a different context, in which case the message would be a "communication" for purposes of § 1692c(b):

> What information a message conveys depends partly on context, but Brown does not plead circumstances in which Van Ru's message would mean more than what the words say. A message that would seem cryptic to a third party may have a clearer import when directed to the debtor, and a message that is part of a series of communications may mean more because of what has already been said. . . . Messages may imply the existence of a debt in some situations, and they are "communications" in exactly those situations.

804 F.3d at 743.

Applying the rationale of *Van Ru* to the unanswered call scenario at issue in this case, and finding persuasive the reasoning of the courts in *Cerrato* and *Rush*, the Court finds no genuine issue of material fact that the Litts, inferentially if not directly, understood that the 160 PRA calls that they received but did not answer were from PRA in connection with their son Michael's debt. "[T]aking the facts and drawing inferences in favor of the non-moving party, Plaintiffs knew that . . . Portfolio was a debt collector. . . . [and] it can reasonably be inferred that at that point Plaintiffs knew that Portfolio, as a debt collector, was calling Plaintiffs with respect to a debt." *Rush*, 977 F. Supp. 2d

20

at 423.  Plaintiffs' declarations establish that by mid-February, 2011, they were well aware of why PRA was calling them and they knew by the information conveyed on their caller ID that the PRA calls that they did not answer in 2012 and 2013 were from PRA.  Marvin Litt testified that he "told [his] son on several occasions that PRA was calling our home about his debt and that it was upsetting his mother." ECF No. 108, Amended Declaration of Marvin Litt ¶ 9.  PRA has submitted no evidence in response to create a genuine issue of material fact regarding these assertions by Marvin Litt.  PRA's 30(b)(6) deponent confirmed that all of PRA's calls "outpulse" PRA's identifying information.  According to Ms. Privette, what PRA "out-pulses" for purposes of information to be displayed on a caller ID is a telephone number and the name Portfolio Recovery Associates. Privette Dep. 137. According to Ms. Privette, every number "out-pulsed" by PRA when called gets back to a PRA representative.  *Id*.  PRA never deposed Marvin and Karol Litt and has submitted no evidence to contradict their testimony that they reasonably understood these unanswered calls to have been from PRA regarding their son Michael's alleged debts.  Accordingly, the Court finds that the 160 some calls from PRA to Marvin and Karol Litt that occurred within the one year prior to filing of this action were "communications" under the FDCPA.

For these reasons, the Court GRANTS Plaintiff's motion for summary judgment on his claim that PRA violated § 1692c(b) and DENIES Defendant's motion for summary judgment on this claim.

### B.     PRA is Entitled to Summary Judgment on Plaintiff's Claim Under Section 1692d - The Catchall Provision of the FDCPA.

Section 1692d, the catchall provision of the FDCPA, provides that: "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. § 1692d.  Section 1692d then lists

21

several examples of certain types of conduct considered harassing and oppressive. Plaintiff claims that the hundreds of phone calls to his parents were intended to intimidate, humiliate and harass *him* in an effort to get him to pay his debts. None of the cases cited by Plaintiff involve a claim by the debtor that calls to a third party (as opposed to calls to the debtor himself) were intended to harass and intimidate the debtor. PRA correctly observes that to the extent that the phone calls were harassing and oppressive to Plaintiff's parents, Marvin and Karol Litt have already been compensated for that injury through their acceptance of PRA's offer of judgment. Thus Michael Litt must establish a genuine issue of material fact as to a separate harm to him under § 1692d. This becomes even more problematic for Michael Litt given his decision, announced at the hearing on the parties' cross-motions, to forego his claim for actual damages in this action.

Putting aside for a moment the question of whether Michael Litt can recover at all under § 1692d for calls made to his parents, the Court turns to the question of whether the facts, viewed in the light most favorable to Plaintiff, create a genuine issue of fact that PRA violated § 1692d. The Court concludes that they do not.

Section 1692d(5) requires that Plaintiff demonstrate an *intent* to annoy, harass or abuse. *Saltzman v. I.C. Sys., Inc.*, No. 09-10096, 2009 WL 3190359, at *7 (E.D. Mich. Sept. 30, 2009) (finding "no evidence in the record from which a reasonable trier of fact could infer that Defendant acted with the requisite 'intent to annoy, abuse, or harass' in making the telephone calls at issue" where debtor never requested that calls be stopped and never answered the phone, which suggested a difficulty reaching the debtor rather than an intent to annoy or harass). *See also Pugliese v. Professional Recovery Serv., Inc*., No. 09-12262, 2010 WL 2632562, at *9 (E.D. Mich. June 29, 2010) ("To determine whether Defendant's calls amount to harassment, annoyance or abuse, the

volume of calls must be examined along with the pattern in which they were made and whether or not they were accompanied by oppressive conduct."). In *Pugliese*, defendants placed approximately 350 calls over an eight month period, with only about 10 of those calls resulting in an actual conversation. *Id*. at *10. "Plaintiffs stated that they did not answer their phone because they recognized numbers from PRS on their caller ID." *Id*. The court found that plaintiffs failed to establish that these calls, which were ignored by plaintiffs, violated § 1692d where the debt collector was "only making legitimate, while persistent efforts to reach Plaintiff." *Id*.

Plaintiff appears to concede that there is no direct evidence of such intent on the part of the PRA caller (who in fact has never been identified) with regard to the calls to his parents, but suggests that the general proscription of § 1692d requires no proof of intent if the "natural consequence" of the conduct is to harass, annoy or oppress. Courts have held, however, that the requirement that plaintiff establish that the facts alleged have the natural consequence of harassing or abusing a debtor is tantamount to requiring plaintiff to allege facts that support an inference of intent:

> Section 1692d prohibits debt collectors from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of debt." § 1692d. "This provision of the FDCPA lists nonexclusive examples of the type of conduct prohibited by the Act," including "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." *Harvey v. Great Seneca Fin. Corp*., 453 F.3d 324, 329–30 (6th Cir. 2006) (citing § 1692d(5)). "[A]lthough the question of whether conduct harasses, oppresses, or abuses will [ordinarily] be a question for the jury, ... Congress has indicated its desire for the courts to structure the confines of § 1692d. Courts have therefore dismissed claims filed pursuant to § 1692d as a matter of law if the facts alleged do not have the natural consequence of harassing or abusing a debtor." *Id*. at 330 (second alteration in original). In other words, the debt collector's conduct must be "intended to embarrass, upset, or frighten a debtor." *Id*.

*Lashbrook v. Portfolio Recovery Assoc., LLC*, No. 11-15624, 2013 WL 4604281, at *5 (E.D. Mich.

Aug. 29, 2013). Thus, while the general proscription of § 1692d does not use the word "intent," such a requirement is inferred from the necessity to establish that the natural tendency of the conduct is to embarrass, upset or frighten a debtor. If the natural tendency of certain conduct is to embarrass, upset or frighten, then one who engages in such conduct can be presumed to have intended the natural consequences of his acts. Indeed, where, as here, the alleged § 1692d violation is based solely upon repetitive calling, it would read the intent requirement out of § 1692d(5) if Plaintiff were permitted to proceed under the general proscription of § 1692d based upon repeated calls without demonstrating, at a minimum, a reasonable inference of intent.

Plaintiff contends that "by calling Plaintiff's parents 213 times, PRA violated § 1692d in general." ECF No. 120, Pl.'s Resp. 25. However, evidence of the sheer number of calls, standing alone, will not meet Plaintiff's burden of establishing a violation of § 1692d:

> [T]he determination whether a debt collector's phone calls amount to "actionable harassment or annoyance turns not only on the volume of calls made, but also on the pattern of calls." *Akalwadi v. Risk Management Alternatives, Inc*., 336 F. Supp. 2d 492, 505 (D. Md. 2004). Thus, the courts have found, for example, that an immediate callback after the debtor has hung up or has indicated his or her unwillingness to speak to the debt collector may constitute improper harassment. *See Lovelace v. Stephens & Michaels Associates, Inc*., 2007 WL 3333019, at *7 (E.D. Mich. Nov.9, 2007); *Joseph v. J.J. MacIntyre Cos*., 238 F. Supp. 2d 1158, 1168 (N.D. Cal. 2002); *Kuhn v. Account Control Technology, Inc*., 865 F. Supp. 1443, 1452–53 (D. Nev. 1994). In contrast, a debt collector does not necessarily engage in harassment by placing one or two unanswered calls a day in an unsuccessful effort to reach the debtor, if this effort is unaccompanied by any oppressive conduct such as threatening messages. *See Udell v. Kansas Counselors, Inc*., 313 F. Supp. 2d 1135, 1143–44 (D. Kan. 2004). Plaintiff carries the burden of establishing that Defendant's calls in this case ran afoul of § 1692d(5). *See Kerwin v. Remittance Assistance Corp*., 559 F. Supp. 2d 1117, 1124 (D. Nev. 2008).

*Lashbrook*, 2013 WL 4604281, at *6 (quoting *Millsap v. CCB Credit Servs., Inc.*, No. 07-11915, 2008 WL 8511691, at *7 (E.D. Mich. Sept. 30, 2008)). In *Lashbrook*, the court concluded that 120 calls over a one-year period was not sufficient to raise a triable issue of harassment. The court

concluded that allegations of nearly daily phone calls, absent allegations regarding the content of the calls, is not sufficient to create a material question of fact regarding harassment. 2013 WL 4604281, at *6. The court did find that allegations regarding multiple phone calls within a single day that plaintiff actually answered "likely does constitute harassment," even though placing a few calls a day that go unanswered "is likely not harassment." *Id. See also Tye v. LJ Ross Assoc.*, No. 11-15195, 2013 WL 424765, at *4 (E.D. Mich. Feb. 4, 2013) (finding that "the amount of calls, in and of themselves, is not a per se violation of the statute," and finding no triable issue as to a violation of § 1692d where there was no evidence beyond the frequency of calls to establish how they were harassing, oppressive or abusive, holding that "a debt collector does not necessarily engage in harassment by placing one or two unanswered calls a day in an unsuccessful effort to reach the debtor, if this effort is unaccompanied by any oppressive conduct such as threatening messages").

Plaintiff provides no evidence in support of his § 1692d claim other than evidence that PRA "called his parents 213 times." But the Court is required to consider both the context and the pattern of calls and Plaintiff provides evidence of neither. Plaintiff asserts that "the sheer volume of calls" to his parents violates § 1692d. Even assuming that Plaintiff could assert this claim based on calls to his parents and not to himself, the evidence he has proffered is insufficient evidence to create a triable issue of fact of harassment under § 1692d. Accordingly, the Court DENIES Plaintiff's motion for summary judgment on his § 1692d claim and GRANTS Defendant's motion for summary judgment on this claim.

25

**C.      PRA is Not Entitled to Summary Judgment on its Bona Fide Error Defense.**

As the Court concluded, *supra* in section IIIA, once PRA was informed on February 5, 2011, that they were calling a third party when calling Marvin and Karol Litt's phone number, the Litt's phone number should have been removed from PRA's system and all subsequent calls that were made to the Litts violated § 1692c(b) of the FDCPA.  PRA argues that even if they did violate § 1692c(b), they are entitled to judgment in their favor based on the bona fide error defense.

Section 1692k(c) of the FDCPA provides:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c).  This provision entitles a defendant to judgment in their favor if the error was an unintentional bona fide error and the defendant maintained procedures designed specifically to avoid the error that occurred.  The "bona fide error defense is an affirmative defense on which the debt collector bears the burden of proof."  *Montgomery v. Shermeta, Adams & Von Allmen, P.C.*, 885 F. Supp. 2d 849, 857 (W.D. Mich. 2012) (citing *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1034 (6th Cir. 1992)).  "The debt collector must show, by a preponderance of the evidence that (1) the violation was unintentional, (2) the violation was a result of a bona fide error, and (3) the debt collector maintained procedures reasonably adapted to avoid any such error."  *Montgomery*, 885 F. Supp. 2d at 857 (citing *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 614 (6th Cir. 2009)).  "The first element of the bona fide error defense is a subjective test that assesses the credibility of the debt collector's assertions that the FDCPA violation was not intentional. The second and third elements of the bona fide error defense are objective inquiries."  *Id.* (citations omitted).  All three prongs must be satisfied for PRA to invoke the bona fide error defense.  *See Lashbrook*,  2013 WL

26

4604281, at *10 (noting that the "three-part test is inclusive," and declining to evaluate defendant's bona fide error defense where the record contained no evidence regarding the first or third prongs of the bona fide error defense). "[T]he bona fide error defense in § 1692k(c) does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the requirements of that statute." *Jerman v. Carlisle*, 559 U.S. 573, 604-05 (2010). The Act aims to shield only "clerical or factual mistakes." *Id.* at 587.

In this case, PRA collectors continued to place calls to Marvin and Karol Litt's phone number after learning, on February 5, 2011, that this was a third-party "wrong" number for Michael Litt. PRA claims that its callers are trained not to call third parties more than once and to remove a phone number that a third party states is a wrong number for the debtor. PRA asserts that calls to Marvin and Karol Litt continued after February 5, 2011 due to a message PRA allegedly received from TransUnion on February 15, 2011, indicating that Marvin and Karol Litt's number was a "good number" for directly reaching Michael Litt.[7] PRA states that it "makes every attempt to avoid violating the FDCPA, and does not intentionally violate the FDCPA." Def.'s Mot. 22.

PRA offers evidence in support of the third prong of its bona fide error defense, *i.e.* that it had training and procedures in place to avoid such errors, but offers only speculation regarding the first and second prongs. Even viewing the facts in the light most favorable to PRA, there is no evidence from which the Court could divine the intention of the individual PRA callers (who have never been identified) who continued to call Marvin and Karol Litt after PRA learned on February

---

[7] Plaintiff argues that the TransUnion entry in the PRA call log is inadmissible hearsay. While the Court need not address this issue at this stage in view of its finding that PRA is not entitled to summary judgment on its bona fide error defense for reasons unrelated to the content of the Trans Union notation, the Court notes that Plaintiff also relies on the entries in the PRA call logs and has not challenged their authenticity.

5, 2011 that the parents' phone was a wrong number for reaching Michael Litt. PRA states that it trains its callers to remove "wrong" numbers and that its callers should have removed Michael Litt's parents' phone number upon receipt of the data from TransUnion based on the February 5, 2011 note in the Call Log that it was a wrong number. ECF No. 109, Def.'s Mot. 13. PRA states that had this procedure been followed, PRA would have removed Marvin and Karol Litt's phone number from the system and would not have placed *any* calls to Plaintiff's parents after February 5, 2011. PRA states nothing, however, and there is no evidence in the record, regarding the intentions of the actual PRA collectors who continued to call Marvin and Karol Litts' number over 160 times after learning that it was a third party "wrong number." The PRA callers' intentions are of course significant because "the bona fide error defense in § 1692k(c) does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the requirements of that statute." *Jerman*, 559 at 604-05.

The fact that PRA may have had policies in place to avoid such an error is only one element of the bona fide error defense. The burden is on PRA to establish each of the elements of the bona fide error defense by a preponderance of the evidence and PRA has failed even to identify the PRA callers who continued to make calls to Marvin and Karol Litt over 160 times after their own records established that it was a wrong number for Michael Litt, let alone establish that the collectors' "error" in doing so was unintentional under § 1692k(c). "It would be pure speculation to conclude that PRA's employee (or employees) . . . did not intentionally violate § 1692[b(3)] . . . . Speculation is not enough to survive summary judgment." *Slick v. Portfolio Recovery Assoc., LLC*, __F. Supp. 3d__, 2015 WL 3982632, at *6 (N.D. Ill. June 30, 2015). As in *Slick*, "PRA essentially collapses the three elements of the bona fide error defense into one." *Id*. PRA "has not provided testimony

from anyone with firsthand knowledge of the way that PRA handled [Michael Litt's] account." *Slick*, 2015 WL 3982632, at *6.

The Court concludes that PRA has failed to establish as a matter of law that it is entitled to rely on the bona fide error defense and DENIES Defendant's motion for summary judgment on this claim. Genuine issues of material fact remain for trial regarding whether PRA is entitled to invoke the bona fide error defense to avoid liability on Michael Litt's claim that PRA violated § 1692c(b).

**D.     Plaintiff Has Abandoned His Claims Under the MOC and MCPA.**

Defendant asserts that Plaintiff cannot bring claims under the MOC and MCPA because these claims are based on the identical conduct being challenged under Plaintiff's FDCPA claims. The cases cited by PRA stand for the proposition that a claim under the MCPA and/or MOC is duplicative of the FDCPA claim. *Boone v. Portfolio Recovery Assoc., LLC*, No. 14-12281, 2014 WL 5473082, at *3 (E.D. Mich. Oct. 27, 2014) (finding that FDCPA and MCPA claims, based on the same conduct, were duplicative). Plaintiff did not respond to this argument in his responsive brief or in his reply in support of his motion and never mentioned his state law claims at the hearing on the parties' cross-motions for summary judgment. In fact, Plaintiff's counsel stated at the hearing that Plaintiff no longer seeks actual damages and claims only statutory damages of $1,000 under the FDCPA, plus reasonable attorneys fees and costs as allowed under the FDCPA. Accordingly, the Court concludes that Plaintiff has abandoned and no longer pursues his state law claims and GRANTS Defendant's Motion for Summary Judgment on Plaintiff's state law claims.

**E.     Michael Litt's Claims Do Not Seek an Impermissible Double Recovery.**

Finally, PRA argues that because Marvin and Karol Litt have already accepted PRA's Offer of Judgment for full resolution of their claims in this action, Michael Litt cannot seek to recover for

damage to him allegedly caused by the same phone calls that underlie his parents' claims.  Plaintiff's First Amended Complaint (ECF No. 30) was filed on behalf of Marvin, Karol and Michael Litt "jointly and severally," and does not differentiate the damage alleged to have been suffered by each of the Plaintiffs individually.  Defendant's Rule 68 Offer of Judgment to Marvin and Karol Litt excluded Michael Litt and offered that judgment be entered against PRA in the total amount of $4,000, plus reasonable attorneys fees and costs, as to the claims of Marvin and Karol Litt that were alleged in Plaintiffs' Complaint or could have been brought by them in this action.  (ECF No. 71-1, Defendant's Rule 68 Offer of Judgment ¶ 1-3.)  Marvin and Karol Litt accepted this Offer of Judgment and subsequently were awarded $33,882.70 in fees and costs.  (ECF No. 125, Order Adopting Report and Recommendation Granting in Part and Denying in Part Motion for Attorney Fees.)  Plaintiffs Marvin and Karol Litt have acknowledged full satisfaction of the Judgment and their counsel acknowledged at the hearing on this matter that he has received full payment of the $33,882.70 award of fees and costs.  (ECF No. 127, Satisfaction of Judgment.)

This Court has concluded that Michael Litt has standing to assert a claim under § 1692c(b) against PRA for the calls made to his parents and that Michael Litt is entitled to summary judgment on that claim.  Defendant elected to defend separately the claims of Marvin and Karol Litt on the one hand and the claims of Michael Litt on the other.  PRA did not include Michael Litt in its Rule 68 Offer of Judgment and in fact argued in opposition to Plaintiff's fee petition that Plaintiffs' counsel's fee request was "over-inclusive" because it included "billing for all Plaintiffs rather than only the two additional Plaintiffs who accepted the offer of judgment."  (ECF No. 70, Def.'s Obj. to Fee Petition 2-3.)  Magistrate Judge Hluchaniuk, in ruling on Plaintiff's fee petition, accepted PRA's argument, "agree[ing] with PRA that recovery of all the fees is inappropriate, given that

30

Michael Litt's claims remain pending and plainly, some fees were incurred on behalf of Michael Litt, as opposed to the moving Plaintiffs."   ECF No. 123, Report and Recommendation 12. Accordingly, Magistrate Judge Hluchaniuk reduced the attorneys fee award by one-half, viewing Marvin and Karol Litt together as pursuing one claim and Michael Litt separately as pursuing another. *Id.* Having litigated the case as if the claims were separate, PRA now urges the Court to conclude that the claims were identical, such that any recovery awarded to Michael Litt would duplicate the award to his parents.  Although PRA's Offer of Judgment was limited to "Marvin and Karol Litt's claims against Defendant as alleged in the Complaint," PRA now suggests that Michael Litt's claims were co-extensive with those of his parents, despite the fact that PRA excluded Michael Litt from the Offer of Judgment and chose to defend his claims separately.

Complicating the Court's analysis of this issue is Plaintiff Michael Litt's decision, announced to the Court at the hearing on the parties' cross-motions for summary judgment, to forego any claim for actual damages in this action and to seek only statutory damages of $1,000 "as a penalty on the debt collector for getting caught violating the law."  PRA suggests that it has already paid that penalty for the calls made to Marvin and Karol Litt through its accepted Offer of Judgment. The "separateness" of Michael Litt's claim would be easier to imagine were he seeking emotional (or other actual) damages of his own, something peculiarly suffered by him separate from the damages suffered from his parents.  It appears from the record that Michael Litt intended to claim such damages, as indicated by his counsel in defending his attorney fee petition, where he noted that PRA did not include an Offer of Judgment to Michael Litt and "refuse[d] to acknowledge that Michael Litt also suffered damages as a result of helplessly witnessing his parents' distress over being robo-dialed hundreds of times and collected upon for his debts."  (ECF No. 63, Fee

Application of Plaintiffs' Counsel p. 5, ¶ 12.)  Although Plaintiff no longer seeks actual damages, PRA has cited no authority to support the proposition that this in some way diminishes the merits of his individual claim which, if he ultimately prevails, may entitle him to a separate award of reasonable attorneys fees and costs.

Following Marvin and Karol Litt's acceptance of PRA's Offer of Judgment, the litigation of Michael Litt's claims continued, several more depositions were taken, dispositive motions were filed and a lengthy hearing was held.  Plaintiff's counsel concedes that his aim now is to recover the attorney fees and costs which he was denied in connection with the Offer of Judgment and any additional fees and costs to which he may be entitled if he prevails against PRA on the remaining claim with respect to Michael Litt.  Surely there is no "double recovery" with regard to fees in view of the fact that Magistrate Judge Hluchaniuk, in a Report and Recommendation adopted by this Court, decreased Plaintiffs' counsel's fee request by one-half based upon the fact that only half of counsel's efforts were fairly attributable to the claims of Marvin and Karol Litt.  Any fees and costs incurred by Mr. Anderson since Marvin and Karol Litt's claims were settled are of course attributable (assuming their reasonableness) to litigating Michael Litt's individual claim. Accordingly, the Court rejects PRA's argument that Michael Litt seeks an impermissible double recovery.

## IV.   CONCLUSION

For the foregoing reasons, the Court:

(1) GRANTS Plaintiff's Motion for Summary Judgment on his 15 U.S.C. § 1692c(b) claim and DENIES Defendant's Motion for Summary Judgment on this claim;

(2) DENIES Plaintiff's Motion for Summary Judgment on his 15 U.S.C. § 1692d

claim and GRANTS Defendant's Motion for Summary Judgment on this claim;

(3) DENIES Plaintiff's Motion for Summary Judgment on his state law claims and

GRANTS Defendant's Motion on these claims; and

(4) DENIES Defendant's Motion for Summary Judgment on its bona fide error claim

under 15 U.S.C. § 1692k(c).

IT IS SO ORDERED.


s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  November 20, 2015

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 20, 2015.


s/Deborah Tofil
Case Manager